Presiding Judge Scott
delivered the opinion of the court.
This is an action to recover damages for injuries to the appellee alleged to have been occasioned through the negligence of the John Thompson Grocery Company, which at the time conducted a retail grocery and market in the city of Denver.
The plaintiff below obtained a verdict and judgment against the appellant in the sum of one thousand dollars and from which this appeal is taken.
The complaint charged in substance that the defendant so negligently operated and conducted its market as to cause to be thrown and left upon the floor certain kinds of animal grease or meat substance, the same being tallow or some other greasy substance, leaving the same lie upon the floor at its place of business, where customers were accustomed to walk about while doing their trading.
That on the 27th day of November, 1907, and while trading at defendant’s store, and without fault upon her part, and without knowledge that the said greasy substance was upon the floor, the plaintiff walked and stepped upon the same, slipped on said substance and fell and thereby received the injuries complained of, and which she alleged to he serious and permanent.
The defendant answered, specifically and gen *430 erally denying the acts of negligence charged, and pleaded contributory negligence.
Aside from the physicians, whose testimony was confined to the character of the injuries and the treatment thereof, the only witness for the plaintiff was herself.
From this it appears that at the time of the accident, the plaintiff was a woman forty-six years of age, and earned her living in the principal occupation of a laundress; that she was well and strong and had a good earning capacity; that she had been a patron of the store for seven or eight years; that she entered the store of defendant on the morning of the 27th day of November, 1907, between seven and eight o’clock for the purpose 'of purchasing a turkey for Thanksgiving. That entering the front of the store she walked down the aisle between the counters where meat products were kept, and approached a clerk standing where turkeys were exposed for sale. That she stopped and was about to make inquiry of the clerk having in charge what she wanted to purchase, when she slipped and fell. That both her feet slipped from under her; that she was then assisted to her feet and walked toward the rear of the store where a box was provided and upon which she sat down and where she remained for from twenty to thirty minutes when she walked over to the city hall and was attended by the city surgeon.
While sitting on the box, the plaintiff says she found and removed from her foot a piece of fatty substance about as wide as her two fingers, and about an inch and a half long. She does not know exactly what this substance was, but that it was *431 greasy, looked like tallo.w and might have been tallow; that she found it on her foot between the ball of the foot and the instep and that she threw it up against the wall and under the telephone.
The plaintiff further says that she did not call the attention of any person to the existence of the fatty substance and does not know that it'was seen by any one aside from herself. She was assisted in one way and another until she left the store by three different employees, one of them binding a piece of meat on the injured arm. The plaintiff says that the store room was well lighted, that her eyesight was good and that she was looking where she walked and did not see the substance on the floor, which she afterward found on her shoe.
Three physicians testify that the injury was a colles fracture of the arm. The injury was not healed at the time of the trial in May, 1909, and in the opinion of each of the physicians, it was permanent. An operation was had in April after the injury, so that if there is liability upon the part of the defendant the verdict rendered by the jury would appear to be in no sense excessive.
At the close of plaintiff’s testimony the defendant moved for a non-suit which was denied by the court.
Again, the defendant at the close of the trial moved the court for a directed verdict upon grounds substantially as offered in the motion for a non-suit as follows:
“First. The evidence on the trial fails to show in any manner any negligence on the part of the defendant contributing to the injury received by the plaintiff.
*432 Second. There is no evidence whatever that the defendant caused to be thrown upon the floor of its meat market, and left upon such floor, any tallow, animal substance or other greasy substance as charged in the complaint.
Third. The evidence fails to show any failure on the part of the defendant to exercise ordinary and reasonable care under the circumstances as required by law.
Fourth. The evidence affirmatively shows that the defendant did exercise ordinary and reasonable care to keep its floors in a suitable condition.
Fifth. There is no evidence whatever from which any presumption of negligence on the part of the defendant could be inferred.
Sixth. The evidence shows that the plaintiff was negligent herself and by the exercise of ordinary care could have seen the tallow which she claims was upon the floor, if it had been there.
Seventh. The evidence fails to show that plaintiff’s present condition and injuries are a direct, proximate and immediate result of defendant’s negligence.
Eighth. Even if it should appear from the evidence that there was grease upon the floor which caused plaintiff’s fall, the evidence fails to show that the defendant did not exercise reasonable and ordinary care to keep the floor in good condition, and the mere fact that the grease was present, if it was, is not of itself a fact of negligence, sufficient to charge the defendant in this action.”
This motion was likewise overruled and the ruling of the court upon these motions, together *433 with certain instructions, tendered by defendant and refused by the court, are assigned as error.
Of the rulings of the court upon the two motions it will be necessary to consider only that denying the motion of defendant for a directed verdict, for in proceeding with the introduction of its testimony after the denial of its motion for a non-suit, the defendant assumed the risk of any evidence beneficial to the plaintiff from its own witnesses.
The defendant offered the testimony of three witnesses, two in its employ, both at the time .of the trial and at the time of the accident, and one, in the employ of the defendant at the time of the accident, but not at the time of the trial.
These all agree upon certain points as follows: That the defendant caused its floors to be scrubbed once a week; that it caused its floors to be swept from four to five times each day, and always once in the morning, between the time of opening and seven thirty o’clock; that they assisted the plaintiff at the time of the accident; that the floor was swept that morning and before the accident; that they saw no such or any grease or fatty substance, or any such substance on the floor, or on plaintiff’s foot; that plaintiff did not suggest that she had found any such substance; that immediately after the accident, each examined the floor where plaintiff fell and could find no grease or evidence that there had been such on the floor, or any indication that such had been mashed as if by crushing with the foot; that no such fatty or greasy substance as described by plaintiff was kept on either of the counters, between which plaintiff fell.
The witness Albin says that the plaintiff came *434 into the store between seven and eight o ’clock in the morning, that she came toward him, he was looking at her all the time, expecting to take her order; that she was walking as if in a hnrry, and when opposite his block, she turned suddenly as if she was going into the grocery department and fell; that when he was assisting her to arise she said: “I guess I was in too big a hurry.”
The witness Kroeger testifies that he was not at the time of the trial in the employ of defendant, but at the time of the accident was assistant manager of defendant’s meat department; that at the time he had just finished sweeping the floor and had placed the broom away, intending to clean the block, and had just reached the block about eight feet from plaintiff when she fell.
Then taking the testimony in its most favorable light for the plaintiff we find that she had been for some years a patron of the store, in good health with good eyesight, in a well lighted room, walked down an aisle in the meat department of the store that had just been swept, paused at a counter near a clerk to whom she was about to give an order, slipped and fell, sustaining the injuries complained of, and after being seated, found a piece of fatty substance on her shoe between the ball of thé foot and the instep. There is at least no stronger evidence as to defendant’s negligence, and there was no testimony offered tending to contradict the evidence of the defendant as to the custom and efforts to keep its store clean and free from refuse or debris upon the floors. Neither is there any testimony tending to show, that defendant could by the exercise of diligence have discovered the existence of the particu *435 lar substance in tbe question upon its floor, if it in fact was there, which at best can only be inferred from plaintiff’s testimony, to the effect that she found such upon her shoe after the áccident.
Mr. Thompson in his work on negligence suggests as perhaps the best definition of negligence, of the many quoted and discussed, the following: “Failure to observe for the protection of safety of the interests of another’person, that degree of care, precaution and vigilance which the circumstances justly demand,” and says further that “The same conception, possibly better expressed, is found in the definition ‘that negligence is the failure to exercise such care, prudence, and forethought as duty requires to be given or exercised under the circumstances.’ ”
The author further declares: “An essential ingredient in any conception of negligence is that it involves the violation of a legal duty, which one person owes another — the duty to take care, for the safety of the person or property of the other; and the converse proposition is that, where there is no legal duty to exercise care, there can be no actionable negligence. Therefore, it is reasoned that a plaintiff who grounds his action upon the negligence of the defendant, must show not only that the conduct of the defendant was negligent, but also that it was a violation of some duty which the defendant owed to him.” 1 Thompson on Negligence, 4 and 5.
No' rule can be laid down that will fairly apply to all classes of cases relating to actionable negligence and we must therefore look for guidance to those adjudicated cases which involve similar circumstances as in the case at bar, and in this case, *436 the duty of storekeepers for the just protection of their patrons, or those lawfully on or within their premises.
In the very comprehensive brief of appellee we find a very full discussion of this subject with numerous authorities cited.
In Larkin v. O’Niell, 119 N. Y., 221, cited by appellee, the rule was stated as follows:
“The defendant was a dry goods dealer, transacting a very extensive business. A large number of people frequented his store every day. The business that he was conducting was, from its very nature, an invitation to the public to enter upon his premises. He was bound to use reasonable prudence and care in keeping his place in such a condition that people who went there by his invitation were not unnecessarily or unreasonably exposed to danger. The measure of his duty was reasonable prudence and care.” And for this cited Beck v. Carter, 68 N. Y., 283, and Bennett v. R. R. Co., 102 U. S., 577.
' The court in sneaking of the facts in that case further says:
‘.‘There is no proof in the case from which it could be found- that the defendant neglected any duty that he owed to the plaintiff. She was not exposed to any unreasonable or concealed danger. She fell while walking down a broad, carpeted stairway, between four and five o’clock in the afternoon. There was nothing in the manner in which tlie stairs were constructed, used or kept from which such a result could reasonably be anticipated. It is quite probable that the accident occurred from slipping, or from a mis-step by the plaintiff. But whatever *437 caused tlie injury it is quite clear that it could not be attributed to any want of care on the part of the defendant. The language of the court in Crafter v. Metropolitan Railway Co. (L. R. [1 C. P.] 300), applies: ‘The line must be drawn in these cases between suggestions and possible precautions, and evidence of actual negligence, such as ought reasonably’ and properly to be left to a jury. ’ ’
There is no testimony in the case at bar that can in any sense be said to show want of “reasonable prudence and care,” or that the plaintiff was “unnecessarily or unreasonably exposed to danger.”
At best the testimony in this can show only by inference that the greasy substance was on the floor.
Then the only fact that the jury could find in this connection was that the plaintiff found the substance on her shoe after the accident and while sitting down. May the jury infer that because of this fact, the defendant negligently permitted this substance to be on the floor and that plaintiff stepped on it and by reason thereof fell and so sustained the injury.
If the jury are permitted to so speculate, may they not have concluded with equal degree of certainty, that because the plaintiff was looking where she was walking, and did not see the substance on the floor; that the fatty matter having been found neither on the heel or ball of the foot where the weight of the body would necessarily rest; that because she did not experience any sense of stepping on such substance; that because the floor had been swept immediately previous to the accident; that because an examination made immediately after, dis *438 closed no grease spot or other evidence of the mashing’ of the substance on the floor, andwithoutwhich.it could not have caused the fall; that because no such pieces of fat were kept on the defendant’s counters near that point; and that all the meats were cut on blocks behind the counters, that therefore and because of these facts the substance became attached to her foot in some other place and at a different time?
Facts constituting negligence must be proven. In this case the only alleged fact from which negligence might be even inferred is in itself doubtful. Appellee cites the case of Market Co. v. Claggett, 19 App. Cases, 12, where the plaintiff upon entering the market, without being able to see clearly what was in her path stepped upon some fish and ice that had been spilled on the floor, and sustained the injury in question. But the doctrine declared in that case is not materially different from that before stated. There the court said:
“It was the duty of the Market Company to guard against danger to their patrons, and if, by reason of the unsafe condition of the premises, an injury to a patron be sustained, without fault on his part, the onus is upon the market company to show that it could not, by the exercise of reasonable care by those for whose acts and omissions it was liable, have prevented the accident. Judge Cooley in his work on Torts, pp. 604-607, says, that when one 'expressly or by implication invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them to danger, - and to that end he must exercise ordinary care and prudence to *439 render the premises reasonably safe for the visit.’ And in the leading English case of Indermaur v. Dames, L. R. 1. C. P., 274, and 2 Id., 511, where the question was fully considered as to the rights of persons who, upon invitation, either express or implied, visit premises upon business which concerns the owner or occupier, the court said ‘that it was settled law that a visitor of that class, using reasonable care on his part for his own safety, is entitled to expect that the occupier shall, on his part, use reasonable care to prevent damage from unusual danger which he knows or ought to know. ’ ’
In that case there was no question but that the fish and ice were on the floor.where it ought not to have been, nor was there any question but that the plaintiff slipped by stepping on the fish and ice, and so caused the fall and the injury. Beside, a witness employed by the party owning the particular stall in the market, testified that he had seen the fish and ice on the floor in the aisle a short time before the plaintiff came in, but he was engaged, and did not stop to take them up but did so after the accident, so that the danger being shown the question of knowledge or opportunity to know of it upon the part of defendant was clearly a question for the jury.
But assuming that the grease was on the floor and was the cause of plaintiff’s fall, before plaintiff can recover, there must be some evidence at least, tending to show that defendant or its agents knew, or by the exercise of reasonable diligence could have known this fact, before it may be held guilty of negligence.
In Reeves v. 14th Street Store, the plaintiff fell on defendant’s stair, claiming she slipped on what *440 “looked as though some one had spit up a lot of phlegm and it had laid there the way it was for two or three days, for it was dried around the edges, and that is what I took it I fell on.” Mr. Justice Gaynor said:
‘ ‘ The verdict was not justified either on the law or the facts. There was no evidence that the defendant knew of the mess on the stairway described by the plaintiff and her husband, nor from which it could be found that it was there so long that in ordinary care the defendant should have known of it and removed it. It could not remain there long with people constantly walking over it, to say nothing of the store being swept and cleaned daily.”
We hold it to be the rule that in the case of a merchant,, where the public are invited on his premises, to inspect and purchase his goods, he is held to a greater degree of care and diligence than otherwise, yet he cannot be held to be an insurer of the safety of his patrons.
In this case we are unable to find any evidence of negligence at all, and in addition to what has been said in that regard, the defendant’s assistant foreman of the market, testified that it was his duty, and to which he attended, to walk about the floor and to pick up- matches, cigar stubs and other debris that he might find.
It was therefore, the duty of the court in the absence of any evidence as to negligence upon the part of the defendant to have directed a verdict in its favor. .
In this the case of working woman, dependent upon her labor for support, and with a probably permanent injury, is presented one which strongly *441 appeals to botli a court and jury, but to determine otherwise than we do, would be to hold that the mere fact of the accident is sufficient in itself to charge the defendant with the fault, for there does not appear from the evidence a failure upon its part to perform any duty which the law enjoins.
The judgment is reversed and the case remanded.
All the judges concurring.